Filed 8/31/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA PATRICK SEYMOUR,<br><br>Defendant and Appellant. | H040560<br>(Santa Clara County<br>Super. Ct. No. CC955665) |

Defendant and appellant Joshua Patrick Seymour was convicted by plea of one felony count of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) as the result of domestic violence toward his girlfriend. (All further undesignated statutory references are to the Penal Code.) The trial court suspended imposition of sentence and granted probation for three years. The conditions of defendant's probation required him, among other things, to serve four months in jail, followed by a six-month residential substance abuse program, to complete a 52-week domestic violence program, and to not have any contact with the victim. As a condition of probation, the court also ordered defendant to pay victim restitution to the Victim Compensation and Government Claims Board (VCGCB). Initially, defendant violated his probation. Eventually, however, he complied with the conditions of his probation, except that he did not pay the full amount of victim restitution ordered. Four months before his probation was scheduled to end, the court discharged defendant from probation to permit him to attempt to get his nursing license reinstated and become more financially

stable so he could pay victim restitution. At that time, defendant still owed $5,726.97 in victim restitution and the court advised him that he would have to pay the total amount due. Eight months after that, defendant filed a petition for relief pursuant to section 1203.4 to withdraw his plea and enter a plea of not guilty, to dismiss the complaint, and to be released "from all penalties and disabilities" resulting from his conviction. The trial court denied the petition.

On appeal, defendant argues that notwithstanding his failure to pay victim restitution in full, he was entitled to relief under the provision in section 1203.4, subdivision (a) that provides for mandatory relief when a defendant has been "discharged [from probation] prior to the termination of the period of probation." The Attorney General argues that defendant was not entitled to relief because he neither paid nor was excused from paying victim restitution in full.

We conclude that defendant's failure to fully pay victim restitution did not authorize the trial court to deny the relief otherwise mandated by section 1203.4. We will therefore order the trial court to vacate its order and enter a new order granting the petition.

## FACTS

On September 20, 2009, at approximately 10:45 p.m., San José police officers responded to a report of domestic violence at a hotel. The victim, Meredith Masri, and defendant were in a dating relationship. Based on information on defendant's cell phone, Masri became suspicious that defendant had been cheating on her. They argued. Later, they went to the hotel bar and had a couple of drinks. Defendant became intoxicated and was " 'not acting right.' " Masri suspected he had taken too much of his anti-anxiety medication.

After they returned to their hotel room, a physical altercation ensued. According to Masri, defendant pushed her. When she attempted to leave, he blocked the door and

2

slapped her in the face. He punched her in the face with a closed fist several times. Masri started to bleed from her mouth and her eyes began to swell shut. Defendant threw Masri onto the floor, where she scraped her knees and back. He then threw her onto the bed and punched her in the face several more times. He put his hands on her throat and strangled her until she gasped for air. During the struggle, defendant ripped off her dress, leaving her naked, then forced her into the shower to prevent her from escaping. When defendant left the bathroom, Masri escaped with just a towel wrapped around her.

Masri's injuries included a broken nose, bruises on her neck and throat, swelling of her entire face (her eyes were swollen shut), bruises and scratches on her back, and abrasions on her knees. She was treated by paramedics at the scene and taken to a hospital.

A police officer observed blood on defendant's head, neck, face, and hands, and on the walls, floor, and linens of the hotel room. The officer found a broken glass with blood on it in the bathroom and a bloody butter knife on the bed. Defendant told the officer he and Masri had been dating for two years and said Masri was 22 weeks pregnant with his child. Defendant told the officer that after they returned to the room, they decided to take a bath together. Defendant said that as he exited the bathtub, he slipped and fell on the wet floor and landed on a drinking glass, cutting his back. Defendant denied any physical altercation with Masri. Defendant had multiple lacerations on his head, neck, back, and chest. He also had swelling on his face and right hand.

## PROCEDURAL HISTORY

### *Original Charge, Plea Agreement, and Grant of Probation*

The prosecution charged defendant with one felony count of assault by means of force like to produce great bodily injury (§ 245, subd. (a)(1)). The parties entered into a negotiated disposition in December 2009. In exchange for his no contest plea, defendant

3

was granted probation on the condition that he serve 10 months in jail. The parties agreed that the 10-month jail sentence would include four months in jail, with the remaining time to be served in a residential substance abuse treatment program.

Prior to sentencing, the probation officer reported that defendant had three prior misdemeanor convictions, two of which resulted in grants of probation. Defendant was thus on probation when he assaulted Masri. Defendant's prior misdemeanor convictions included: (1) driving under the influence (Veh. Code, § 23152, subd. (b)); (2) driving on a suspended license (Veh. Code, § 14601.5, sub. (a)); and (3) vandalism (§ 594, subd. (b)(1)). Masri told the probation officer she did not plan to reconcile with defendant and requested a protective order.

At sentencing, the court suspended imposition of sentence and granted three years probation. In accordance with the plea agreement, the court ordered defendant, as a condition of probation, to serve 10 months in jail with six months of that time in a residential treatment program. Other conditions of probation included: (1) substance abuse counseling, (2) a 52-week domestic violence program, (3) 40 hours of uncompensated community service, (4) a protective order and an order to stay away from Masri for three years, (5) victim restitution in an amount to be determined by the parties, and (6) fines and fees.

### *Defendant's Conduct on Probation & Restitution Order*

On May 7, 2010, defendant was charged with violating the no-contact order. He admitted the violation in exchange for the prosecution's promise not to file new criminal charges based on the violation. The court found a felony violation of probation, revoked and reinstated probation, and ordered defendant to serve an additional 60 days in jail consecutive to his prior jail term.

In June 2010, defendant was accepted into a residential treatment program and began psychiatric treatment at the Valley Homeless Clinic. In August 2010, defendant's

4

case was assigned to the domestic violence/mental health review calendar. Thereafter, defendant made monthly or bi-monthly appearances before the court to discuss his progress on probation.

In October 2010, the court ordered defendant to pay $6,584.97 in victim restitution to the VCGCB. The court also made an order of restitution in favor of Masri in an unspecified amount.

In December 2010, Masri appeared at defendant's review hearing and asked the court for a "peaceful contact order." The court observed that defendant had just started his domestic violence program and had missed a therapy session and a drug testing appointment. The district attorney argued that defendant was not participating in his domestic violence program, and asked the court to deny the peaceful contact order to allow time for defendant to work on his programs. The court denied the request to modify the no-contact order. The court ordered defendant to complete his community service by the next court date and to attend thirty 12-step meetings in 30 days.

At the January 2011 review hearing, the court noted that defendant had complied with the conditions of his probation and was doing well in his domestic violence program, except that he had violated the no-contact order by seeing Masri at some of his 12-step meetings. Although the court characterized this as "willful disobedience of the court order," it elected not to declare a probation violation. The court also denied defendant's request to modify the no-contact order.

The next day, Masri filed a motion to modify the protective order, stating that she and defendant wanted to live together. The motion was scheduled for a hearing on February 23, 2011. Prior to the hearing, the probation officer filed a supplemental report that recounted the facts that led to defendant's 2008 conviction for vandalism. The male victim in that case responded to defendant and Masri's advertisement on Craigslist requesting a " 'consensual encounter.' " The three of them went to a bar, then rented a hotel room. When the male victim refused to perform oral sex on Masri, defendant

5

yelled obscenities, threw wine in the male victim's face, and threw a glass at the back of the male victim's head, causing the glass to shatter. Defendant then slapped Masri, which provided the male victim an opportunity to escape.

The court denied Masri's request to modify the protective order.

### *Violations of No-Contact Order in August 2011*

On August 3, 201, defendant was arrested for violating the no-contact order (§ 273.6, subd. (a)). At approximately 10:00 a.m. that day, defendant went to Masri's home and asked Masri's female housemate (Housemate) if she wanted to get drunk and have sex. Housemate agreed to get drunk with defendant but declined to have sex with him. After they had been drinking for a few hours, defendant made sexual advances toward Housemate. Housemate sent Masri a text message asking her to come home because defendant was making sexual advances toward her. Masri arrived, talked to defendant, and then left to pick up her children. After Masri left, defendant continued to make sexual advances toward Housemate. Housemate told defendant Masri had called the police, so he left. Masri told the police she had established a "romantic relationship without violence" with defendant in September 2010, allowed him to spend the night, but he did not live with her.

After that incident, Housemate moved because she no longer felt safe when defendant was present. On August 22, 2011, Housemate's boyfriend went to Masri's apartment to pick up Housemate's mail, saw defendant inside, and called the police. By the time the police arrived, defendant had left. During the investigation, Masri's new housemate arrived. She told the officers she had lived there for 10 days and said defendant had been living there ever since she moved in. Defendant was arrested that day for violating the no-contact order.

Three days later, the court revoked defendant's probation. Later, defendant was terminated from his domestic violence program for violating the protective order. The

6

final report from the program therapist indicated that defendant had completed 46 out of 52 sessions, had not complied with the conditions of the program contract, was 12 weeks behind on fees, and was not benefitting from the program. Under "concerns," the therapist listed defendant's "ongoing contact with the victim in spite of a no[-]contact order" and his "inability to stay clean and sober along with evidence he is often aggressive to violent when under the influence[;] the primary issues [*sic*] to living without violence is a life-long commitment to recovery from his addictions." The therapist stated: "all progress I believed he was making appears to be a sham. He will not be offered an opportunity to earn credit for classes completed" and will have to do the whole program over.

On September 21, 2011, Masri sent a letter to the court requesting a peaceful contact order. Masri described her efforts in individual therapy and in a support group for victims of domestic violence. She told the court defendant had made "huge strides towards being stable mentally and emotionally" and was "a gentle, loving and devoted father" to their son.

The prosecution eventually filed two new misdemeanor complaints. Each complaint charged defendant with one count of violating the no-contact order (§ 273.6, subd. (a)) based on the events of August 3, 2011 (case No. B1156566) and August 22, 2011 (case No. B1156567).

In November 2011, the parties entered into a negotiated disposition of the two new misdemeanors and the probation violation alleged in this case. Pursuant to their agreement, defendant pleaded guilty as charged in the misdemeanor cases. The court suspended imposition of sentence in both cases and granted probation to run concurrent with defendant's probation in the felony assault case. The court imposed several conditions of probation, including that defendant serve six months in jail for each of the misdemeanors to run concurrently.

7

As part of the plea agreement, defendant also admitted the probation violation in the felony assault case, which was based on his violations of the no-contact order. The court revoked and reinstated defendant's probation with modifications. As a condition of probation, the court ordered defendant to serve eight months in jail for the probation violation, concurrently with the jail terms imposed in the misdemeanor cases. The court reinstated the other terms and conditions of defendant's probation and ordered him to complete a 52-week domestic violence program as a condition of probation in all three cases. The court denied defendant's request to modify the no-contact order, but agreed to revisit the issue when defendant had complied with his probation conditions.

### *Defendant's Conduct on Probation After November 2011*

After November 2011, defendant made steady progress in his domestic violence and other programs. In February 2012, the court modified the domestic violence protective order to allow peaceful contact between defendant and Masri. In February 2013, the court determined that no further review hearings were required.

In March 2013, the court held a hearing on the prosecution's request to increase the amount of the victim restitution awarded to VCGCB from $6,584.97 to $8,987.97 (an increase of $2,403) to account for additional benefits VCGCB had paid on behalf of Masri. Defendant, who was self-represented at that point, told the court he and Masri were living together. He said he was receiving limited financial support through general assistance. He also said he was taking care of their son while Masri worked, and that he was paying what he could afford for victim restitution every month. Defendant assumed the purpose of the hearing was to extend his probation. At the time of the assault, defendant worked as an emergency room nurse. He argued against an extension of his probation because he was trying to reinstate his nursing license, which was revoked in 2011 because of his felony assault conviction. Defendant believed extending his

probation would jeopardize his efforts to get his license reinstated. The court referred defendant to the public defender's office and scheduled a further hearing.

On March 23, 2013, the court conducted a second hearing on the request to modify the restitution order. Defendant did not dispute increasing the amount of restitution, but he asked the court to terminate his probation that day (approximately four months early) so he could get his nursing license reinstated, become more financially stable, and pay restitution. Defense counsel advised the court that defendant had already paid $3,261 to VCGCB and defendant promised to continue paying. The court granted the request to increase the amount of victim restitution to VCGCB to $8,987.97, terminated defendant's probation early, and advised defendant he would have to pay the total amount ordered as victim restitution. The court told defendant: "This doesn't go away, it will stay with you."

### *Petition for Section 1203.4 Relief and Reduction of Offense to a Misdemeanor*

Approximately eight months later, defendant filed a petition for relief under section 1203.4 and a motion to reduce his felony conviction to a misdemeanor (§ 17). Defendant told the court that prior to the assault, he was a registered nurse at San Francisco General Hospital. His nursing license was revoked as a result of his felony conviction. In July 2011, he was offered a job as a tissue donation coordinator for a donor network, but that offer was rescinded after the prospective employer completed a criminal background check. Since early 2013, he had done volunteer work in the immunization program at a community health center. And in May 2013, he had started training to become a phlebotomy technician. From August to October 2013, he worked as a hotel night auditor. On October 15, 2013, he started working part-time as a hospital services assistant at Valley Medical Center earning $13 per hour. He had completed his domestic violence program: 110 two-hour sessions in all. He regularly attended

9

Alcoholics Anonymous (AA) meetings and celebrated two years of sobriety in August 2013. In addition, he had obtained substance abuse counseling.

Evidence in support of defendant's petition included character letters from his domestic violence program counselor, his AA sponsor, a vocational counselor at the Department of Rehabilitation, a nurse at the community health center, and the therapist in his substance abuse program. Defendant told the court he had recently obtained "an unofficial offer of employment" as a "medical examiner" for the Sherriff's Department. The offer was contingent on passing a medical exam and not having any felonies on his record. Defendant told the court that as soon as his criminal record was "expunged," he planned to get his nursing license reinstated. Defendant stated that he had paid $3,331 to the VCGCB ($70 in the eight months since his probation was terminated) and still owed $5,656.97. Defendant asked the court to waive, strike, or dismiss any outstanding fines and fees and to covert the restitution order to a civil judgment.

The probation department opposed defendant's petition on a variety of grounds, including that defendant (1) had not satisfied all of the conditions of his probation, including the failure to pay victim restitution; (2) had violated his probation by committing new offenses, and (3) had outstanding balances due in each of his criminal cases.

The trial court granted relief under section 17 and reduced the felony assault conviction to a misdemeanor, but it denied defendant's request for relief under section 1203.4.

## DISCUSSION

Section 1203.4 provides in relevant part: "(a) (1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant

10

should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; . . . and, . . . , the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, . . . ."

Where the propriety of the trial court's order on a petition for relief under section 1203.4 turns on the interpretation of the relevant statutory provisions, it presents an issue of law, which we review de novo. (*People v. Guillen* (2013) 218 Cal.App.4th 975, 983-984 (*Guillen*).)

"A grant of probation is not a matter of right; it is an act of clemency designed to allow rehabilitation. [Citations.] It is also, in effect, a bargain made by the People, through the Legislature and the courts, with the convicted individual, whereby the latter is in essence told that if he complies with the requirements of probation, he may become reinstated as a law-abiding member of society. [Citation.] As an additional inducement, the '[r]emoval of the blemish of a criminal record' is held out through the provisions of . . . section 1203.4. [Citation.]" (*People v. Chandler* (1988) 203 Cal.App.3d 782, 788 (*Chandler*).)

As the California Supreme Court explained in *Stephens v. Toomey* (1959) 51 Cal.2d 864, 870-871, "[w]hen such an order has been entered there is no further criminal prosecution pending against the defendant. He has then, without any further showing of rehabilitation on his part, received a statutory rehabilitation and a reinstatement to his former status in society insofar as the state by legislation is able to do so, with one exception, namely, that under section 1203.4 . . . the record in the criminal

11

case may be used against him for limited purposes in any criminal proceeding thereafter brought against him."

As explained in *People v. Holman* (2013) 214 Cal.App.4th 1438 (*Holman*), the "release[ ] from all penalties and disabilities" provided in section 1203.4 "is sometimes referred to as 'expungement' of the conviction." (*Id.* at p. 1463; see e.g. *People v. Butler* (1980) 105 Cal.App.3d 585, 587 (*Butler*); *People v. Covington* (2000) 82 Cal.App.4th 1263, 1266 (*Covington*).) Strictly speaking, however, section 1203.4 does not " 'expunge' " the conviction, nor render it "a legal nullity." (*Holman*, at p. 1463, citing *People v. Frawley* (2000) 82 Cal.App.4th 784, 791.) Charges dismissed under section 1203.4 may be treated as convictions for some purposes. For example, in a future prosecution, the dismissed charges may be pleaded and proved as prior convictions or used to impeach a defendant who testifies. (§ 1203.4, subd. (a); *Holman*, at p. 1463.) However, the "release[ ] from all penalties and disabilities" under section 1203.4 is a "palpable benefit, such that the conviction may be treated as if it were not a conviction for most purposes." (*Holman*, at p. 1463.)

Based on the plain language of section 1203.4, subdivision (a), the cases have identified three factual situations or "scenarios" in which a defendant may apply for relief under section 1203.4. (*Holman*, *supra*, 214 Cal.App.4th at p. 1459; see also *Chandler*, *supra*, 203 Cal.App.3d at p. 788; and *Butler*, *supra*, 105 Cal.App.3d at p. 587.) With exceptions not applicable here, they include when the defendant (1) "has fulfilled the conditions of probation for the entire period of probation," or (2) "has been discharged prior to the termination of the period of probation," or (3) "in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under" section 1203.4. (§ 1203.4, subd. (a); *Holman*, *supra*, 214 Cal.App.4th at p. 1459) If the petitioner comes within either of the first two scenarios, "the court is required to grant the requested relief." (*Butler*, at p. 587.) In such cases, the defendant is entitled to relief "as a matter of right" and dismissal is mandatory.

12

(*Holman*, at p. 1459, citing *Chandler*, at p. 788 and *Butler*, at p. 589.) "Under the third scenario, the court exercises its discretion whether to grant relief in the interests of justice." (*Holman*, at p. 1459; *Butler,* at p. 587 ["A grant of relief in the third situation is clearly discretionary"].)

Defendant acknowledges that he is not entitled to relief under the first scenario. He concedes that since he admitted two violations of probation, "he clearly could not claim that he successfully completed each of the terms of his probation." In addition, we note that the conditions of defendant's probation required him to pay $8,987.97 in victim restitution to the VCGCB. When he filed his section 1203.4 petition, he had paid only $3,331 and still owed $5,656.97. His failure to comply with the probation condition that required him to pay victim restitution also precludes relief under the first scenario. (See e.g., *Butler*, *supra*, 105 Cal.App.3d at p. 587 [defendant who failed to pay victim restitution in full acknowledged that he was not entitled to relief under first scenario]; *Chandler*, *supra*, 203 Cal.App.3d at pp. 788-789 [a defendant who fails to pay victim restitution in full is not entitled to relief under the first scenario in section 1203.4]; *Covington*, *supra*, 82 Cal.App.4th at pp. 1269-1271 [same].)

Likewise, defendant does not claim he is entitled to discretionary relief under the third scenario or that the court abused its discretion in denying such relief. Instead, defendant argues that "only the second of these three scenarios is pertinent." And like the defendant in *Butler*, defendant here argues that he is entitled to section 1203.4 relief because he was discharged from probation early. (*Butler*, *supra*, 105 Cal.App.3d at p. 587.) Near the end of Butler's original probationary period, the trial court extended his probation for six months because he had not fully repaid victim restitution, and it required him to undergo a medical examination to determine whether he had become totally disabled in an accident. Butler underwent the examination, and the medical reports confirmed that he was totally disabled. The court then terminated his probation, ending it more than three months before the new termination date. (*Ibid.*) On appeal, the

13

Attorney General argued that Butler's original term of probation would have expired before he was discharged from probation and that, since the probationary period was extended because he was in violation of probation, he "should not receive the benefit of early discharge from an extension that was necessitated by his own failure to comply with his probation conditions." (*Id.* at p. 588.)

The court in *Butler* observed that while the trial court had found a probation violation, it did not revoke probation. Instead, it modified probation to allow for a medical evaluation. It noted that "[t]he record does not show whether this extension was for a punitive purpose or only to gain evidence to show whether Butler should be relieved from his previous conditions." (*Butler*, *supra*, 105 Cal.App.3d at p. 588.) The court held it did not matter "why the period was extended, or that the original period would not have been terminated early." (*Ibid.*) It found the original termination date "no longer exist[ed]" after the trial court extended the probationary period. The court explained that the "authority for early termination of probation is found in section 1203.3. It allows a court to terminate probation at any time 'when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it . . . .'" (*Butler*, at p. 589.) By terminating probation early, a court expresses its belief that a defendant should be relieved from the restrictions of probation. The court concluded that "[o]nce probation is terminated early, a later judge who is requested to grant relief under section 1203.4 is without discretion to deny relief." (*Ibid.*)

*People v. Hawley* (1991) 228 Cal.App.3d 247 (*Hawley*), *Holman*, *supra*, 214 Cal.App.4th 1438, and *People v. Johnson* (2102) 211 Cal.App.4th 252 (*Johnson*) are instructive. In *Hawley*, the defendant was placed on probation and initially had problems complying with the conditions of his probation. He was arrested for burglary and for driving under the influence, but was not prosecuted for either offense. After these early lapses, the defendant performed well on probation. He remained arrest-free, paid his restitution fine in full, and completed therapy. The trial court terminated probation early,

14

and the defendant petitioned for "release from penalties and dismissal" under section 1203.4. The trial court denied the petition on the sole ground that the nature of the offense—nonforcible sodomy of a person under age 18—was " 'just too serious.' " (*Hawley*, at p. 249.) While some offenses are expressly excluded from relief under section 1203.4, subdivisions (b) and (c), the offense in *Hawley* was not. The appellate court reversed, holding that the defendant was entitled to relief as a matter of right because his probation had been terminated early. "[T]he seriousness of the original offense was wholly irrelevant." (*Hawley*, at p. 250 & fn. 4.)

The defendant in *Holman* was convicted by plea of a drug offense and placed on probation. After she committed additional crimes that resulted in multiple violations of her probation, she was referred to a drug court treatment program. With the exception of a setback at the beginning of the program, the defendant did well and completed the program. She began attending school and working part-time. After she graduated from her drug treatment program, the court (1) terminated her probation early; (2) ordered all fines suspended, including restitution fines (§ 1202.4, subd. (b)) that had not been paid in full; and (3) granted the defendant's petition for relief under section 1203.4. (*Holman*, *supra*, 214 Cal.App.4th at pp. 1446-1448.) The Attorney General appealed the ruling suspending all fines and fees. (*Id.* at p. 1448.) The appellate court affirmed, stating: "once the trial court had terminated [the] defendant's probation prior to the termination date, the court had no further discretion to deny a motion for relief under . . . section 1203.4" (*Id.* at p. 1468.) The court also concluded that the suspension of unpaid fines and fees was proper in the circumstances of the case. (*Id.* at pp. 1473-1476.)

And in *Johnson*, the defendant's probation was reinstated twice after violations of probation, including failure to enroll in and attend a domestic violence program and failure to surrender to the jail for weekend service. After the defendant violated probation a third time, the court imposed an additional 120-day jail sentence to run concurrent with the defendant's sentences in two felony cases, and it terminated

15

probation early.  (*Johnson*, *supra*, 211 Cal.App.4th at pp. 257-258.)  The defendant applied for relief under the second scenario in section 1203.4 because he had "been discharged prior to the termination of the period of probation."  (§ 1203.4, subd. (a).)  The trial court denied the petition and the appellate court affirmed.  (*Johnson*, at p. 256.)  Construing the term "discharged" in the second scenario in subdivision (a) of section 1203.4, the court stated:  "Because . . . section 1203.4 was intended as a reward for good conduct, it cannot be interpreted to authorize relief to defendants simply because probation has been terminated early; the defendant is required to show he has fulfilled the terms of probation or has been excused therefrom 'prior to the termination of probation.' "  (*Johnson*, at p. 262.)  "A defendant may be 'discharged' from certain probationary conditions upon the 'termination' of the probationary period at its expiration, as well as by fulfillment of the conditions, or an order modifying the conditions to excuse the defendant's performance of conditions, *prior* to the expiration of the term.  [Citation.]  In this way, 'discharge from probation' may occur prior to the 'termination of the period of probation' where the defendant has fully performed all the conditions of probation prior to the expiration of the probationary term, or has been excused therefrom."  (*Johnson*, at p. 263, citing *People v. Williams* (1944) 24 Cal.2d 848, 852-853, original italics.)  The court held that since the "defendant never fulfilled the prescribed conditions of probation during the probationary term, and because his period of probation was not terminated for good conduct, but, rather, because a prison term had been imposed on him in other felony cases, he was not eligible for relief under Penal Code section 1203.4."  (*Johnson*, at p. 264.)

Defendant argues that like the defendants in *Butler*, *Hawley* and *Holman*, he is entitled to mandatory relief under the second scenario in section 1203.4 since the trial court terminated his probation "prior to the expiration of the original term."  He contends further that unlike *Johnson*, there is no evidence that the early termination of his probation "was based on his bad conduct or on a violation of probation."  Indeed, he

16

argues, "no such violation had been charged. The early termination had been requested so that [he] could regain his nursing license and increase the amount of restitution" he could pay.

The Attorney General argues that since defendant still owed outstanding victim restitution he was not entitled to relief under section 1203.4. She argues that *Johnson* is controlling and that under *Johnson*, defendant was not "discharged prior to the termination of the period of probation" because he had neither paid the entire amount of victim restitution ordered or been excused from paying that amount, since the court ordered him to continue paying victim restitution after probation ended.

In our view, this case is factually distinguishable from *Johnson*. First, *Johnson* does not involve a failure to pay victim restitution. The opinion does not address the question of victim restitution at all. Second, the defendant's probation in *Johnson* was terminated early because of bad conduct that resulted in further jail time. Among other things, the defendant in *Johnson* was ordered to serve 30 days in jail, attend anger management classes, and enroll in a 52-week domestic violence program as conditions of probation, with the jail time to be served on consecutive weekends. (*Johnson*, *supra*, 211 Cal.App.4th at p. 257.) The defendant in *Johnson* violated his probation on multiple occasions by failing to enroll in the domestic violence program, failing to attend anger management classes, failing to surrender for his weekend commitments, and failing to attend his domestic violence classes after he had finally enrolled. (*Id.* at pp. 257-258.) After the court issued its third notice of violation, it revoked probation and issued a bench warrant. Eight months later, the defendant appeared on the bench warrant and admitted the probation violations. The court ordered him to serve an additional 120 days in jail, to run concurrent with his sentence in two new felony cases, and terminated his probation early. (*Id.* at p. 258.)

Unlike the defendant in *Johnson*, who made virtually no effort to complete the programs ordered as conditions of probation, defendant here completed his domestic

17

violence program—110 two-hour sessions in all—and obtained substance abuse counseling. He regularly attended AA meetings and had been sober for more than two years when he filed his section 1203.4 petition. In *Johnson*, the court held that a defendant who seeks section 1203.4 relief based on an early discharge from probation must establish not just that probation was terminated early, but that probation was terminated early because of the defendant's good conduct. (*Id.* at pp. 262-263.) The trial court here terminated probation early based on defendant's good conduct, to allow the defendant to reinstate his nursing license and to return to a profession with a greater income potential that would allow him to pay his victim restitution obligation.

The Attorney General also argues that this case is distinguishable from *Holman*. In that case, the trial court suspended all fines and fees (including restitution fines) upon terminating probation, thereby excusing the defendant from paying fines and fees. By contrast, the trial court here ordered defendant to continue making victim restitution payments after probation ended. The Attorney General contends, therefore, that defendant was not entitled to relief under the second scenario in section 1203.4 because he had "not fulfilled the terms of his probation nor [had] he been excused from compliance." The contention seems to be that the trial court could not grant section 1203.4 relief without either requiring that victim restitution be paid in full or excusing defendant from the obligation of paying further victim restitution. Thus, on the facts of this case, the question becomes whether the trial court was required to grant section 1203.4 relief in spite of the fact that it had not excused defendant from his obligation to pay victim restitution when it terminated his probation early.

In addressing this question, we return to *Butler*. The defendant in *Butler*, like defendant here, violated his probation by failing to pay victim restitution. One of the conditions of Butler's probation required him to pay $2,500 in victim restitution within four years. During that time, Butler paid only $530. (*Butler*, *supra*, 105 Cal.App.3d at p. 587.) The trial court denied section 1203.4 relief, but the Court of Appeal reversed,

18

holding that relief should have been granted because defendant's probation was terminated early. Although the appellate court in *Butler* directed the trial court to grant the defendant's section 1203.4 petition, it did not make any orders regarding amounts still owed for victim restitution. Nothing in that opinion suggested that by granting the section 1203.4 petition, Butler was excused from paying the balance owed in victim restitution. *Butler* thus supports the conclusion that defendant is entitled to section 1203.4 relief under the second scenario because his probation had terminated early, regardless of whether he had fully paid victim restitution or had been excused from paying the balance of it. Indeed, relief is mandatory under the second scenario in section 1203.4 if the defendant "has been discharged prior to the termination of the period of probation." (§ 1203.4, subd. (a).) Nothing in section 1203.4 requires that a defendant also be excused from any unfulfilled conditions of probation to obtain relief under that scenario.

In 1982, the electorate passed Proposition 8, known as the Victim's Bill of Rights. Among other things, Proposition 8 declared a state constitutional right of crime victims to restitution from persons convicted of crimes that cause losses to the victims. (*Guillen*, *supra*, 218 Cal.App.4th at p. 984.) Article I, section 28, subdivision (b) of the California Constitution provides that "[r]estitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary . . . ."

Section 1202.4 implements this constitutional provision. It provides, in part: "(f) [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court *shall* require that the defendant make restitution to the victim or victims in an amount established by court order, . . . . The court *shall* order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (Italics added.) Thus, victim restitution is mandatory. (*People v. Kleinman* (2004) 123 Cal.App.4th 1476, 1479-1480.)

19

In addition, section 1202.4 provides that in "every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders . . . a condition of probation. Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation shall continue to be enforceable by a victim . . . until the obligation is satisfied." (§ 1202.4, subd. (m).) The statute also provides that a "restitution order . . . shall be enforceable as if the order were a civil judgment." (§ 1202.4, subd. (i).) Furthermore, if a defendant has an unpaid balance on a restitution order 120 days prior to his or her scheduled release from probation, section 1202.4, subdivision (f)(11) requires the defendant to file a new and updated financial disclosure. This is done "to facilitate future enforcement of the remainder of the unpaid restitution . . . ." (*Holman*, *supra*, 214 Cal.App.4th at p. 1453.)

Based on these and other statutory provisions, the *Holman* court concluded that "in general, the Legislature intended the unpaid balance of restitution orders to survive a probationary term." (*Id.* at p. 1453.) Thus, the termination of probation does not terminate a restitution order.

In addition to the provisions in section 1202.4, section 1203.3, subdivision (b)(4) provides, in part: "The court shall not modify the dollar amount of the restitution obligations due to the good conduct and reform of the defendant, absent compelling and extraordinary reasons, nor shall the court limit the ability of payees to enforce the obligations in the manner of judgments in civil actions."

Given the mandatory nature of victim restitution, the statutory limitations on the trial court's ability to reduce the amount ordered as victim restitution, and the statutory acknowledgement that a victim restitution order survives the termination of probation, we conclude trial courts are not authorized to deny the relief mandated by the second scenario in section 1203.4 on the basis that a defendant still owes an outstanding balance on victim restitution.

20

Finally, the Attorney General's reliance on *Chandler* is misplaced. The *Chandler* court concluded that the defendant in that case was not entitled to relief under the first scenario in section 1203.4 ("defendant has fulfilled the conditions of probation for the entire period of probation") because he failed to pay victim restitution. (*Chandler*, *supra*, 203 Cal.App.3d at pp. 787-789.) The court also held that the defendant could not rely on the second scenario to obtain section 1203.4 relief because he had not been discharged from probation early. (*Id.* at pp. 789-790.) In contrast, defendant here does not rely on the first scenario to obtain relief and was discharged from probation early.

In summary, we hold that since defendant was "discharged [from probation] prior to the termination of the period of probation" (§ 1203.4, subd. (a)) based on good conduct as evidenced by the completion of his programs and an extended period of sobriety, the fact that he still owed an outstanding balance on victim restitution does not authorize a trial court to deny the relief otherwise mandated by section 1203.4. Given the mandatory nature of the relief available under section 1203.4 (*Butler*, *supra*, 105 Cal.App.3d at p. 587), we will order the trial court to vacate its order denying defendant's section 1203.4 petition and enter a new order granting the petition.

Although our decision allows defendant to obtain the benefit of the section 1203.4 despite his failure to pay the full amount ordered as victim restitution during his probationary period, he is not escaping his restitution obligations. The trial court made it clear that victim restitution is still an obligation defendant must meet, and the statutory scheme provides that VCGCB may pursue civil remedies if defendant does not honor his promise to pay the balance owed as victim restitution. (See *In re Timothy N.* (2013) 216 Cal.App.4th 725, 738.)

## DISPOSITION

The order on defendant's petition for relief under section 1203.4 is reversed. The trial court is directed to vacate its previous order denying the petition and enter a new order granting the petition.

_____
Márquez, J.

WE CONCUR:


_____
 Rushing, P. J.


_____
Grover, J.


The People v. Seymour
No. H040560

Trial Court:                                     Santa Clara County
                                                Superior Court No.: CC955665

Trial Judges:                                    The Honorable Rene Navarro
                                                The Honorable Teresa Guerrero-Daley


Attorney for Defendant and Appellant            Patrick McKenna
Joshua Patrick Seymour:                         under appointment by the Court of
                                                Appeal for Appellant




Attorneys for Plaintiff and Respondent          Kamala D. Harris,
The People:                                      Attorney General

                                                Gerald A. Engler,
                                                Chief Assistant Attorney General

                                                Rene A. Chacon,
                                                Supervising Deputy Attorney General

                                                Julia Y. Le,
                                                Deputy Attorney General

People v. Seymour
H040560