Filed 10/22/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEOLA ALLEN,<br><br>    Defendant and Appellant. | D074946<br><br><br>(Super. Ct. Nos. CR143205,<br> SCD120970, SCD153778) |

APPEAL from orders of the Superior Court of San Diego County, Jay M. Bloom, Judge.  Affirmed and remanded, with directions.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Leola Allen pleaded guilty to committing felony welfare fraud in 1993, 1997, and 2000 (and to committing felony perjury in 2000).  At sentencing in each case, the trial court ordered Allen to pay direct victim restitution and various fines and fees.  In 2018, Allen filed petitions under Penal Code sections 1203.4 and 1203.42 seeking

discretionary "expungement" of her convictions on the basis she had been rehabilitated.[1] She also sought to stay, dismiss, or delete her court-ordered fines and fees because she asserted she was unable to pay them. The prosecution opposed the expungement requests because Allen still owed about $9,000 in direct victim restitution; the prosecution did not oppose the request for relief from the fines and fees. The trial court denied Allen's petitions based on her outstanding victim restitution obligations, but did not directly address her request for relief from the fines and fees.

On appeal, Allen argues that under the recent decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court's denial of her expungement petitions on the basis of her outstanding victim restitution obligations violated her due process or equal protection rights because she was financially unable to pay the victim restitution. As we will explain, this argument lacks merit for two reasons. First, *Dueñas* is materially distinguishable—it involved revenue-generating assessments and a punitive restitution fine, whereas this case involves voter-mandated direct victim restitution intended to make

---

[1] Although the relief afforded by Penal Code sections 1203.4 and 1203.42 "is sometimes referred to as 'expungement' of the conviction," the statutes "do[] not, strictly speaking, 'expunge' the conviction, nor render the conviction 'a legal nullity.' " (*People v. Guillen* (2013) 218 Cal.App.4th 975, 996 (*Guillen*).) For example, convictions "expunged" under these statutes still may be used against the defendant in subsequent prosecutions and professional licensure proceedings, and may disqualify the defendant from possessing firearms or holding public office. (Pen. Code, § 1203.4, subd. (a)(1)-(3); *Guillen*, at p. 996.) But because the statutes provide "a palpable benefit, such that the conviction may be treated as if it were not a conviction for most purposes" (*Guillen*, at p. 996), we will refer colloquially to the relief afforded by them as "expungement." Further statutory references are to the Penal Code unless otherwise indicated.

the victim whole. Second, we agree with the analysis of numerous courts that have rejected *Dueñas*'s due process framework.

Alternatively, Allen contends the trial court erroneously concluded that her outstanding victim restitution obligations deprived the court of the authority to grant discretionary expungement. The record does not support this contention.

On remand, however, we direct the trial court to conduct further proceedings in two respects. First, because the trial court did not directly address Allen's request for relief from the court-ordered fines and fees (other than victim restitution), we will direct the trial court to do so. Second, because the record is unclear regarding whether Allen paid all the victim restitution owed in connection with her convictions in 2000, we will direct the trial court to make this factual determination and, if the court determines she has paid it all, to reconsider her expungement petition in light of that fact.

In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Allen's Underlying Convictions*

*The 1993 Case*

In 1993, Allen pleaded guilty in case No. CR143205 (the 1993 Case) to one felony count of failing to report income to the Department of Social Services (Department) resulting in her receipt of more than $400 in unentitled benefits (hereafter, welfare fraud).

3

(Welf. & Inst. Code, former § 10980, subd. (c)(2).)[2] The trial court placed Allen on probation for five years, ordered her to pay victim restitution of $10,994, and imposed a restitution fine of $200. Allen's probation expired in 2000.

*The 1997 Case*

In 1997, Allen pleaded guilty in case No. SCD120970 (the 1997 Case) to one felony count of welfare fraud. (Welf. & Inst. Code, former § 10980, subd. (c)(2).) The trial court placed Allen on probation for five years, ordered her to pay victim restitution (the appellate record does not indicate the amount), and imposed various fines and fees (including a $200 restitution fine, $507 for court-appointed attorney fees, and unspecified investigatory and report-preparation costs).

*The 2000 Case*

In 2000, Allen pleaded guilty in case No. SCD153778 (the 2000 Case) to one felony count of welfare fraud (Welf. & Inst. Code, former § 10980, subd. (c)(2)), and one felony count of perjury (§ 118, subd. (a)). The trial court sentenced Allen to three years in prison, ordered her to pay victim restitution of $2,821, and imposed a restitution fine of $400.

As a result of her convictions in the 2000 Case, the trial court revoked Allen's probation in the 1997 Case and sentenced her to two years in prison.

---

[2] At all relevant times, the threshold for a felony violation of Welfare and Institutions Code section 10980, subdivision (c)(2) was $400. (Welf. & Inst. Code, former § 10980, subd. (c)(2); Stats. 1984, ch. 1448, § 2; Stats. 1998, ch. 902 (Assem. Bill No. 2772), § 11; Stats. 1998, ch. 903 (Assem. Bill No. 131), § 2.5; Stats. 1999, ch. 83 (Sen. Bill No. 966), § 202.) The threshold has since been increased to $950. (Welf. & Inst. Code, § 10980, subd. (c)(2).)

4

*Allen's Petitions to Expunge Her Convictions*

In September 2018, Allen filed separate (but substantially similar) petitions in the 1993, 1997, and 2000 Cases seeking to expunge her convictions and to "permanently stay, dismiss, and/or delete" the court-ordered fines and fees (but not the victim restitution, which she acknowledged would survive expungement). Allen invoked the court's discretionary authority under sections 1203.4 (as to her conviction in the 1993 Case) and 1203.42 (as to her convictions in the 1997 and 2000 Cases) to further "the interest of justice."

In a supporting declaration, Allen stated she had remained sober and law-abiding for the past 17 years; obtained employment until her "100% . . . SSI Disability assessment" prevented her from working further; pursued a GED and enrolled in a community college course; and regularly attended church. She stated in her declaration that she was seeking expungement, in part, because one of her sons is serving a life sentence in prison, and when she "tried to visit him, [she] was denied entry because of [her] three prior felony convictions. Obtaining the requested post-conviction relief will allow [her] to visit [her] son."

Allen acknowledged she had several outstanding court-ordered financial obligations: (1) in the 1993 Case, victim restitution of $4,374; (2) in the 1997 Case, victim restitution of $4,626.64, attorney fees of $507, supervision costs of $167, and fines totaling $408; and (3) in the 2000 Case, no victim restitution, but fines in the amount of $400. Allen asserted she was unable to fulfill these obligations because she is 59 years

5

old, is "100% disabled owing to mental illness," lives "in Section 8 Housing," and subsists entirely on "SSI Disability" assistance of $910.72 per month.

*The Prosecution's Oppositions*

The prosecution opposed Allen's requests that her convictions be expunged, arguing her outstanding victim restitution obligations precluded expungement as a matter of right or as a matter of discretion in the interests of justice.[3]  The prosecution did not oppose Allen's request to stay, dismiss, or delete the court-ordered fines and fees other than victim restitution.

*The Hearing and Ruling*

At the outset of the hearing on Allen's petitions, the trial court indicated it "wasn't inclined to grant" them "because she owes victim restitution," which "is a little different." Defense counsel responded that even if the convictions were expunged, the victim restitution obligations would still be enforceable as civil judgments.  He further argued Allen was "being discriminated against because she can't pay."  The court responded: "Well, I respectfully disagree, because every defendant could avoid restitution and ask for a civil judgment.· I know you can get one, but there's still an issue about paying the restitution.  [¶]  So I'll deny all three without prejudice so restitution is paid . . . to the victim."

---

3    The prosecution's evidence of Allen's outstanding financial obligations—audit worksheets from the Office of Revenue and Recovery as of November 6, 2008—differed slightly in some respects from Allen's assertions in her declaration.  Most notably, the audit report for the 2000 Case indicates no balance is due, but states:  "***NO ORDER RECEIVED TO ESTABLISH ACCOUNT FOR CASE SCD153778***"

Allen appeals.

## DISCUSSION

### I. *Relevant Legal Principles*

#### A. *Victim Restitution*

"California law provides for two types of restitution: direct restitution to the victim [citation], which is based on a direct victim's loss, and a restitution fine [citation], which is not. Payment of direct victim restitution goes directly to victims and compensates them for economic losses they have suffered because of the defendant's crime." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169; see *People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).) Restitution fines are payable to the state's "Restitution Fund." (*Guillen*, *supra*, 218 Cal.App.4th at p. 985.) "The purposes of the two kinds of restitution are different. The imposition of a restitution fine is punishment. [Citation.] The purpose of direct victim restitution, however, is to reimburse the victim for economic losses caused by the defendant's criminal conduct, i.e., to make the victim reasonably whole. [Citations.] Secondary goals of direct restitution include rehabilitation of the defendant and deterrence of future criminality." (*Guillen*, at p. 984.) Allen's primary appellate challenge relates to direct victim restitution.

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights[, which] added article I, section 28, subdivision (b) to the California Constitution[.]" (*Giordano*, *supra*, 42 Cal.4th at p. 652; *People v. Covington* (2000) 82 Cal.App.4th 1263, 1268 (*Covington*); *People v. Gross* (2015) 238 Cal.App.4th 1313,

7

1317-1318 (*Gross*).) As adopted, this provision read: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] . . . Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section . . . ." (Cal. Const., former art. I, § 28, subd. (b).)[4]

"A victim's right to restitution is, therefore, a constitutional one; it cannot be bargained away or limited, nor can the prosecution waive the victim's right to receive restitution." (*Gross*, *supra*, 238 Cal.App.4th at p. 1318.)

As directed by the voters, the Legislature enacted section 1202.4 to implement the Victims' Bill of Rights. (*Giordano*, *supra*, 42 Cal.4th at pp. 652-653; *Gross*, *supra*, 238 Cal.App.4th at p. 1318; *People v. Seymour* (2015) 239 Cal.App.4th 1418, 1435 (*Seymour*).) This statute manifests "the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime . . . receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Subject to exceptions not applicable here, this statute provides that "in every case in

---

4    In 2008, after Allen was ordered to pay victim restitution in the 1993, 1997, and 2000 Cases, the voters amended article I, section 28 of the California Constitution to eliminate a sentencing court's discretion to not award victim restitution when "compelling and extraordinary reasons exist." (*Gross*, *supra*, 238 Cal.App.4th at p. 1318, fn. 5.)

8

which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order . . . . The court shall order full restitution." (§ 1202.4, subd. (f).) The statute further provides that a "defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." (§ 1202.4, subd. (g).) A victim restitution order is "enforceable as if [it] were a civil judgment." (§ 1202.4, subd. (a)(3)(B)).

## B. *Expungement*

Allen based her petition to expunge her conviction in the 1993 Case on section 1203.4, and her petitions to expunge her convictions in the 1997 and 2000 Cases on section 1203.42.

### 1. *Section 1203.4*

Section 1203.4, subdivision (a)(1) states:

> "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been

9

convicted, except as provided in Section 13555 of the Vehicle Code." (§ 1203.4, subd. (a)(1).)

From this language, the courts have identified the following "three circumstances in which a defendant may apply for relief under . . . section 1203.4: if, '(a) he has fulfilled the conditions of his probation for the entire period; (b) he has been discharged before the termination of the period of probation; or (c) in any case in which a court, in its discretion and the interests of justice, determines he should be granted relief.' " (*Guillen*, *supra*, 218 Cal.App.4th at p. 991; see *Seymour*, *supra*, 239 Cal.App.4th at p. 1429.) "Under either of the first two scenarios, the defendant is entitled as a matter of right to the dismissal of the charge." (*Guillen*, at p. 991; see *Seymour*, at p. 1430.) "Under the third scenario, the court exercises its discretion whether to grant relief in the interests of justice." (*Guillen*, at p. 991; see *Seymour*, at p. 1430; *People v. Butler* (1980) 105 Cal.App.3d 585, 587 (*Butler*) ["A grant of relief in the third situation is clearly discretionary."].) Allen based her petition to expunge her conviction in the 1993 Case on the *discretionary* scenario of section 1203.4.

" ' "A grant of relief under section 1203.4 is intended to reward an individual who successfully completes probation by mitigating some of the consequences of his conviction and, with a few exceptions, to restore him to his former status in society . . . ." ' " (*Guillen*, *supra*, 218 Cal.App.4th at p. 998.) " 'Removal of the blemish of a criminal record is the reward held out through the provisions of . . . section 1203.4, as an additional inducement. The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment.' " (*Ibid.*)

10

### 2. *Section 1203.42*

Section 1203.42, subdivision (a)(1) provides that, "[i]f a defendant was sentenced prior to the implementation of the 2011 Realignment Legislation for a crime for which he or she would otherwise have been eligible for sentencing pursuant to subdivision (h) of Section 1170, the court, *in its discretion and in the interests of justice*, may order" the same expungement relief available under section 1203.4.  (Italics added.)  Under this language, relief is entirely discretionary.

Allen sought discretionary expungement of her convictions in the 1997 and 2000 Cases under section 1203.42.  The parties agree that her offenses in those cases fall within the statute's scope.  (See Welf. & Inst. Code, § 10980, subd. (c)(2) [punishment for welfare fraud includes "imprisonment pursuant to subdivision (h) of Section 1170"]; § 126 ["Perjury is punishable by imprisonment pursuant to subdivision (h) of Section 1170"].)

### II. *Denying Expungement Based on Allen's Outstanding Victim Restitution Obligations Did Not Violate Due Process or Equal Protection*

Allen's primary contention on appeal is that the trial court violated her due process and equal protection rights by denying her expungement petitions on the basis of outstanding victim restitution obligations that she maintains she was unable to pay.  Although no California court appears to have addressed this precise issue, courts have rejected similar arguments in closely analogous contexts.  We therefore reject Allen's contention.

It is well-established that an indigent defendant's outstanding victim restitution obligation precludes *mandatory* expungement under the first scenario of section 1203.4 (fulfillment of all probation conditions). (*People v. Chandler* (1988) 203 Cal.App.3d 782, 789 (*Chandler*); *Covington*, *supra*, 82 Cal.App.4th at pp. 1269-1270; *Guillen*, *supra*, 218 Cal.App.4th at p. 1000.) The rationale for this rule is that a defendant who has not fulfilled a probation condition requiring payment of victim restitution has "not fulfilled *all* the terms of his probation during the '*entire*' probationary period." (*Guillen*, at p. 1000, italics added.)[5]

In *Covington*, *supra*, 82 Cal.App.4th 1263, the court held that denying mandatory expungement on the basis of an indigent defendant's outstanding victim restitution obligation does not violate due process or equal protection. The defendant in *Covington* pleaded guilty to theft, was granted probation, and was ordered to pay her employer approximately $99,000 in victim restitution. (*Id.* at p. 1265.) The probation department determined she could afford monthly restitution payments of $150. (*Id.* at p. 1265.) After making all scheduled payments, the defendant still owed approximately $88,000 in victim restitution at the end of her probationary period. (*Ibid.*) Based on this outstanding

---

[5] By contrast, a defendant *is* entitled to mandatory expungement under section 1203.4's second scenario (early discharge from probation) even if he or she still owes victim restitution. (See *Butler*, *supra*, 105 Cal.App.3d at pp. 587-589 [defendant who still owed about $2,000 of victim restitution was entitled to mandatory expungement because probation was discharged early when he became totally disabled in a car accident]; *Seymour*, *supra*, 239 Cal.App.4th at pp. 1427, 1436 [defendant who still owed about $5,700 of victim restitution was entitled to mandatory expungement because his probation was discharged early to facilitate reinstatement of his nursing license].) When expungement is granted in this scenario, the victim restitution obligation survives the expungement. (*Seymour*, at p. 1436.)

obligation, the trial court denied her petition for mandatory expungement. (*Ibid.*) The Court of Appeal affirmed. (*Id.* at p. 1271.)

The *Covington* court recognized that the probation department's determination of the defendant's ability to pay was intended to protect her due process rights. (*Covington*, *supra*, 82 Cal.App.4th at p. 1268, fn. 3.) But the court also observed that expungement serves as "an additional inducement" in achieving the rehabilitative objectives of probation, which include " 'requiring the defendant to return his ill-gotten gains and helping him appreciate the harm done to the victim.' " (*Id.* at p. 1270.) On balance, the court concluded that "the rehabilitative purposes of probation, much less the constitutional right of a victim to restitution, would be ill served if the defendant could have his or her conviction expunged without having made up for the victim's losses." (*Ibid.*)

In reaching this conclusion, the *Covington* court declined to find an equal protection violation "simply because [the defendant] was not wealthy enough to have paid her court-ordered restitution in full while she was on probation." (*Covington*, *supra*, 82 Cal.App.4th at p. 1270.) The court explained that the due process protection against requiring a defendant to make restitution payments he or she cannot afford does "not . . . relieve a wrongdoer from responsibility for the consequences of his or her criminal act. It would be anomalous indeed if a provision designed to equalize the treatment of rich and poor defendants were applied in a way that only shifted the inequality to the other extreme. Equal protection means only that [the defendant] can have her conviction

13

expunged, the same as the wealthier defendant in her hypothetical, if and when she pays restitution to [the victim, in full]." (*Id.* at p. 1271; see *People v. Hicks* (2019) 40 Cal.App.5th 320, 327 (*Hicks*) [" 'immuniz[ing]' " an indigent defendant from both incarceration and fines " 'would amount to inverse discrimination [because] it would enable an indigent [defendant] to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other . . . .' "].)

We find *Covington*'s reasoning persuasive,[6] and see no principled reason why outstanding restitution obligations can properly disqualify an indigent defendant from *mandatory* expungement but not *discretionary* expungement.

In arguing against this conclusion, Allen relies most heavily on the recent decision in *Dueñas*, *supra*, 30 Cal.App.5th 1157, in which the defendant—an indigent mother of two who subsisted on public aid because she was unable to work due to cerebral palsy— challenged the constitutionality of imposing mandatory court facilities and operations assessments and restitution fines without first determining the defendant's ability to pay them. (*Id.* at pp. 1160-1161, 1164-1165, 1169.) The Court of Appeal for the Second District, Division Seven, held that imposing the assessments and fine on an indigent defendant violated due process. (*Id.* at pp. 1167, 1168, 1172.)

Addressing the court facilities and operations assessments—which the *Dueñas* court observed were not "intended to be punitive in nature" but, rather, were "enacted as parts of more comprehensive legislation intended to raise funds for California courts"

---

6 Although the Attorney General discussed *Covington* in its respondent's brief, Allen did not address it in her reply brief.

14

(*Dueñas*, *supra*, 30 Cal.App.5th at p. 1165)—the court found it is "unfair" and "serves no rational purpose" to impose "unpayable fines on indigent defendants" because doing so "does not accomplish the goal of collecting money" (*id.* at p. 1167). Rather, the court explained, imposing these assessments on an indigent defendant is tantamount to "inflict[ing] additional punishment." (*Id.* at p. 1166.) This is all the more unfair, the court reasoned, considering that the "civil counterparts" to the criminal-case court-funding assessments were "enacted in the same legislation and [are] imposed only on those with the means to pay them." (*Id.* at p. 1169.)

Similarly, the *Dueñas* court found that imposing a restitution fine—which "is a debt of the defendant to the state" and "is intended to be . . . additional punishment for a crime" (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169)—on an indigent defendant is fundamentally unfair because an unsatisfied restitution obligation necessarily deprives the defendant the opportunity to obtain *mandatory* expungement of the conviction as a matter of right under the first scenario of section 1203.4 (*Dueñas*, at pp. 1170-1172).

We decline to follow *Dueñas* for two reasons. First, *Dueñas* is readily distinguishable. It involved revenue-generating assessments and punitive fines, whereas this case involves a constitutionally mandated victim restitution order intended to make the victim whole for its losses. These purposes are "fundamentally different." (*People v. Evans* (2019) 39 Cal.App.5th 771, 776 (*Evans*); *People v. Kopp* (2019) 38 Cal.App.5th 47, 94, fn. 22 (*Kopp*) ["[b]ecause victim restitution is a civil remedy, we do not address that restitution" in connection with the defendant's *Dueñas* challenge]; *People v. Aviles*

15

(2019) 39 Cal.App.5th 1055, 1068-1069 (*Aviles*), citing *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1034 (*Gutierrez*) (conc. opn. of Benke, J.).)

Second, even if we were otherwise inclined to extend *Dueñas* to victim restitution, we would adopt the reasoning of the numerous courts that have rejected *Dueñas*'s due process analysis. (See *Hicks*, *supra*, 40 Cal.App.5th at pp. 326-329; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1068-1069; *Kopp*, *supra*, 38 Cal.App.5th at pp. 96-97; *Gutierrez*, *supra*, 35 Cal.App.5th at p. 1034 (conc. opn. of Benke, J.).) Many of these courts "have suggested that the proper analytic framework . . . is the excessive fines clause of the Eighth Amendment to the United States Constitution, rather than the due process clause." (*Evans*, *supra*, 39 Cal.App.5th at p. 776, fn. 2; see *Aviles*, at pp. 1068-1069; *Kopp*, at pp. 96-97; *Gutierrez*, at p. 1034 (conc. opn. of Benke, J.).) [7]

In rejecting *Dueñas*'s due process analysis, the *Hicks* court—a sister division of the *Dueñas* court—explained that *Dueñas*'s due process analysis is unsupported by the "two distinct strands of due process precedent" it "wove together." (*Hicks*, *supra*, 40 Cal.App.5th at p. 325.) "The first strand secures a due process-based right of *access* to the courts" by "requir[ing] courts to waive court costs and fees that would otherwise

---

[7] An Eighth Amendment framework would likely offer Allen no assistance because a victim restitution award that is proportionate to the victim's loss is not a constitutionally excessive fine. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1071, fn. 27; *United States v. Newell* (1st Cir. 2011) 658 F.3d 1, 35 ["The [federal] circuits that have considered challenges to restitution orders under the Excessive Fines clause have held that where the restitution order reflects the amount of the victim's loss no constitutional violation has occurred."]; *United States v. Dubose* (9th Cir. 1998) 146 F.3d 1141, 1145 [" 'Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order.' "].)

16

preclude criminal and civil litigants from prosecuting or defending lawsuits or from having an appellate court review the propriety of any judgment." (*Ibid*.)  However, this "strand does not dictate *Dueñas*'s bar on imposing fees because the imposition of assessments, fines and fees does not deny a criminal defendant access to the courts." (*Hicks*, at p. 326; see *People v. Caceres* (2019) 39 Cal.App.5th 917, 927 ["[f]ees imposed *after* a case is completed . . . do not deprive defendants of access to justice"]; *Gutierrez*, *supra*, 35 Cal.App.5th at p. 1039 (conc. opn. of Benke, J.) ["the imposition of the two assessments and one restitution fine on the defendant in *Dueñas* was not an issue of access to the courts or our system of justice"].)

"The second strand [of precedent relied on by *Dueñas*] erects a due process-based bar to incarceration based on the failure to pay criminal penalties when that failure is due to a criminal defendant's indigence rather than contumaciousness." (*Hicks*, *supra*, 40 Cal.App.5th at p. 325.)  But this "strand also does not dictate *Dueñas*'s bar on imposing fees because their imposition, without more, does not result in incarceration for nonpayment due to indigence." (*Hicks*, at p. 326.)

As applied here, neither of *Dueñas*'s due process "foundational pillars" (*Hicks*, *supra*, 40 Cal.App.5th at p. 327) is implicated by the trial court's denial of Allen's expungement petitions based on her outstanding victim restitution obligations.  The denial of her petitions did not deny her access to the trial court or to this appeal, nor did it result in her incarceration.  It merely left her criminal record intact.

To the extent any of the more general due process underpinnings discussed in *Dueñas* apply here, they support the conclusion there was no due process violation. *Dueñas* discussed at length the Supreme Court's decision in *Bearden v. Georgia* (1983) 461 U.S. 660 (*Bearden*), which held that a state may not automatically revoke probation and incarcerate a defendant for nonpayment of restitution without first inquiring about the reasons for nonpayment. (*Id.* at pp. 661, 672-673.) The *Bearden* court identified the following factors to consider when analyzing a defendant's constitutional rights vis-à-vis the consequences of his or her ability to pay: "Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . .' " (*Id.* at pp. 666-667, fn. omitted.)

Applying these factors, the California Supreme Court in *People v. Cookson* (1991) 54 Cal.3d 1091 (*Cookson*) held that a statute that bars revocation of probation for nonwillful failure to pay restitution (§ 1203.2) does not bar a court from extending the probationary period to afford more time for payment. (*Cookson*, at p. 1097.) The court explained that its holding was "buttress[ed]" by "common sense" and the probationary purposes of ensuring that the victim is made whole via restitution and that the defendant is punished, deterred, and rehabilitated. (*Ibid.*)

18

A balancing here of the factors identified in *Bearden* shows the trial court did not violate Allen's due process rights by denying her expungement petitions based on her apparently nonwillful failure to pay victim restitution. First, the nature and extent " 'of the individual interest affected' " (*Bearden*, *supra*, 461 U.S. at pp. 666-667) in *Bearden* and *Dueñas* was a complete loss of personal liberty, whereas here it is Allen's desire for a clean criminal record. Delaying expungement until Allen satisfies her restitution obligations is more akin to the extension of the probationary period upheld in *Cookson* than to the incarceration at issue in *Bearden* and *Dueñas*.

Second, Allen has not argued persuasively that denying expungement will "exten[sively] . . . affect[]" her rights. (*Bearden*, *supra*, 461 U.S. at p. 667.) Although she asserts in her declaration that expunging her convictions will enable her to visit her son in prison, she has provided no legal authority or competent evidence to support this assertion. " 'It is the appellant's responsibility to support claims of error with citation and authority . . . .' " (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25.)

Nor is it likely, as Allen now asserts, that her convictions "ironically . . . hamper[]" her ability to obtain the employment necessary to pay the victim restitution because she must disclose them in response to "the common request on job applications to notify potential employers" of prior convictions. This assertion both (1) contradicts her argument below that it is her "100% . . . SSI Disability assessment" (rather than her

19

convictions) that prevented her from working,[8] and (2) ignores the potential impact of California's "Ban the Box" law (Stats. 2017, ch. 789, § 1(a)), which generally makes it "an unlawful employment practice for an employer with five or more employees" to "include on any application for employment, before the employer makes a conditional offer of employment to the applicant, any question that seeks the disclosure of an applicant's conviction history" (Gov. Code, § 12952, subd. (a)(1)).

As to the third *Bearden* factor, allowing courts to withhold expungement as an inducement to ensuring payment of restitution bears a "rational[] . . . connection" (*Bearden*, *supra*, 461 U.S. at p. 667) to the primary purpose of victim restitution—fulfilling the voter-enacted constitutional provision requiring that defendants make victims whole. (*Covington*, *supra*, 82 Cal.App.4th at p. 1270.) It also furthers the secondary purposes of victim restitution—" 'requiring the defendant to return his ill-gotten gains and helping him appreciate the harm done to the victim.' " (*Covington*, *supra*, 82 Cal.App.4th at p. 1270.) This purpose is particularly appropriate where, as here, the restitution award represents money actually diverted from the victim to the defendant (compared with, say, expenses borne by a victim that do not directly enrich the defendant, such as the cost to repair the victim's damaged property).

Allen identifies as an " 'alternative means for effectuating the purpose' " (*Bearden*, 461 U.S. at p. 667) the fact that a victim restitution award survives expungement and remains enforceable as a civil judgment. Her reliance on *Seymour* to emphasize this

---

[8] Indeed, the fact Allen obtained employment before becoming disabled indicates her convictions *did not* prevent her from working.

20

point is misplaced. The *Seymour* court held that outstanding victim restitution is not a valid basis on which to deny *mandatory* expungement under scenario two (early discharge from probation). But it does not follow from this conclusion that outstanding victim restitution is an *improper* consideration in determining whether to grant *discretionary* expungement.

In sum, we conclude the denial of Allen's petitions for discretionary expungement based on her outstanding restitution obligations did not violate her due process rights.

As an alternative to her due process argument, Allen contends that denying expungement on the basis of outstanding victim restitution violates her equal protection rights because it deprives her of a benefit available to wealthier defendants who can afford to satisfy their restitution obligations. We are not persuaded. First, this argument was expressly rejected in *Covington*, *supra*, 82 Cal.App.4th at page 1271, which, as noted, Allen has not addressed in her briefing.

Nor has Allen argued convincingly that an equal protection analysis would be subject to review under anything other than a rational basis analysis. She notes that financial condition, *when coupled with a fundamental right*, may be subject to strict scrutiny. But she has not identified any fundamental right conceivably at issue here. Thus, as with our due process analysis, we conclude there is a rational basis for withholding expungement of a conviction as an inducement to ensuring a victim receives its voter-enacted, constitutionally enumerated right to full restitution.

21

### III. *The Trial Court Understood the Scope of Its Discretion*

As an alternative to her constitutional arguments, Allen argues the trial court abused its discretion by erroneously believing it had none. That is, she contends the fact the trial court denied her expungement petitions on the basis of her outstanding victim restitution obligations indicates the court mistakenly believed the petitions "were brought under the first or second section 1203.4 categor[ies]"—which are mandatory—"rather than the third"—which is discretionary—"ignoring the facts presented by [Allen] regarding her sobriety and community involvement." We are not persuaded.

In reviewing a trial court's order for an abuse of discretion, we presume the order is correct, indulge all intendments and presumptions to support it on matters as to which the record is silent, and the appellant bears the burden to affirmatively show error. (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).) "Thus, the fact that the court focused its explanatory comments on [one factor] does not mean that it considered only that factor." (*Ibid*.)

Allen has not met her burden of affirmatively showing the trial court erroneously based its ruling on section 1203.4's mandatory expungement provisions rather than the discretionary provisions in sections 1203.4 (the third scenario) and 1203.42 (which provides *only* a discretionary basis). In fact, the record shows the contrary. First, Allen's petitions all expressly state they are addressed to the trial court's discretionary authority.

22

Second, Allen indicated in her declaration that she was seeking discretionary relief. Third, the prosecutor argued that neither mandatory *nor discretionary* expungement were warranted. Fourth, the trial court's preliminary observation that it "wasn't inclined"—as opposed to wasn't *able*—to grant the expungement petitions indicates the court understood it had the discretion to grant them—the court just concluded that doing so was not appropriate. Finally, the fact the court focused its explanatory comments on Allen's outstanding victim restitution obligations does not, as she now suggests, compel the conclusion that the court did not consider her mitigating circumstances. (*Myers*, *supra*, 69 Cal.App.4th at p. 310.)

We disagree with Allen's contention that the trial court's "summary ruling" is "quite similar" to the trial court's deficient ruling in *People v. McLernon* (2009) 174 Cal.App.4th 569. In that case, the trial court denied a petition for discretionary expungement on the basis that the court had denied two earlier petitions. (*Id.* at p. 574.) The Court of Appeal reversed because the trial court's ruling, on its face, indicated the court had not considered the merits of the current petition. (*Id.* at p. 575.) Moreover, to the extent the trial court's reference to the earlier rulings constituted an incorporation of the rationales of those rulings, the rationales were inapplicable because they related to mandatory expungement, whereas the current petition was for discretionary expungement. (*Id.* at p. 575.)

This case is nothing like *McLernon*. The trial court did not deny Allen's petitions on the basis of previously denied petitions or on other procedural grounds. To the

23

contrary, the fact the trial court cited Allen's outstanding victim restitution obligations and referred to them as "a little different" indicates the court considered the merits of her petitions. Thus, *McLernon* is inapposite.

### IV. *Further Proceedings on Remand*

Because the trial court did not expressly rule on Allen's unopposed request for relief from the court-ordered fines and fees (other than victim restitution), she requests that we dismiss them in the interests of justice. The Attorney General maintains dismissal is unwarranted because it was Allen's duty to secure a ruling from the trial court in the first instance. We agree dismissal is unwarranted, but will direct the trial court on remand to consider in the first instance Allen's request for relief from the court-ordered fines and fees other than victim restitution. We express no opinion on how the trial court should exercise its discretion on this issue.

On another note, in a footnote in its respondent's brief, the Attorney General points out that, "[a]lthough the record is unclear as to whether [Allen] paid her full victim restitution obligation" in the 2000 Case, she did "not argue . . . that the trial court abused its discretion by relying on outstanding victim restitution as the basis for denying that petition. [Citations.] If it is factually accurate that she owes no victim restitution on that case, remand may be appropriate for the trial court to reevaluate that petition." In her reply brief, Allen agrees that remand is appropriate.

We, too, agree that reconsideration is appropriate. Therefore, we will direct the trial court on remand to determine whether Allen has paid all victim restitution owed in

24

connection with the 2000 Case and, if the court determines she has, to reconsider her petition in that case in light of that fact. We express no opinion on how the trial court should exercise its discretion.

## DISPOSITION

On remand, the trial court is directed to (1) consider whether to stay or dismiss Allen's court-ordered fines and fees (other than victim restitution); and (2) determine whether Allen has paid all victim restitution owed in the 2000 Case and, if the court determines she has, to reconsider her expungement petition in light of that fact. In all other respects, the orders are affirmed.

HALLER, Acting P. J.

WE CONCUR:


AARON, J.


GUERRERO, J.

25